IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBIN CURT ALVAREZ,

        Plaintiff,　　　　　　　　　　　　CV-10-6309-AC

    v.　　　　　　　　　　　　　　　　　　OPINION AND ORDER

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.

ACOSTA, Magistrate Judge:

    Plaintiff Robin Alvarez appeals the Commissioner's decision denying his application for supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). The Commissioner's decision is reversed and remanded for the limited purposes described in this opinion.

1 - OPINION AND ORDER

## BACKGROUND

Alvarez alleges he became disabled January 1, 2006, due to learning disabilities, memory impairment, anxiety disorder, posttraumatic stress disorder ("PTSD"), bipolar disorder, depression, personality disorder, hepatitis C, chronic pain, and sleep difficulty. (Admin. R. 161.) Alvarez filed his application on May 9, 2007. (*Id.* at 11.) The filing date marks the beginning of the relevant period for his claim because supplemental security income payments cannot be made retroactively. 20 C.F.R. § 416.501.

The administrative law judge ("ALJ") applied the sequential disability determination process described in 20 C.F.R. § 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)(describing the five-step sequential process). The ALJ found Alvarez's ability to work affected by hepatitis C, borderline intellectual functioning, depression, and a history of substance abuse. (Admin. R. 13.) The ALJ found that despite his impairments, Alvarez retained the residual functional capacity ("RFC") to perform work at all exertional levels, provided the work does not involve food service, allows him to work primarily alone and not in close proximity to coworkers or the public, does not involve continuous scrutiny by supervisors, is limited to simple instructions of no more than two steps given primarily verbally, and is in a predictable, routine work environment. (*Id.* at 15.) The vocational expert ("VE") testified that a person having Alvarez's vocational factors and RFC could perform work in occupations such as industrial cleaner/janitor, groundskeeper, and cleaner II, representing significant numbers of jobs in the national economy. (*Id.* at 17, 62-63.) The ALJ concluded that Alvarez was not disabled within the meaning of the Social Security Act. (*Id.* at 17.)

## STANDARD OF REVIEW

The court reviews that decision to ensure that proper legal standards were applied and the findings of fact are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the court must uphold the Commissioner's findings of fact, provided they are supported by substantial evidence in the record as a whole, including inferences logically flowing from the evidence; the court must uphold such factual determinations, even if evidence exists to support another rational interpretation. *Tommasetti v. Astrue,* 553 F.3d 1035, 1040 (9th Cir. 2008); *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir.1995); *Morgan v. Commissioner,* 169 F.3d 595, 599 (9th Cir. 1999).

## DISCUSSION

### I.  Claims of Error

Alvarez contends the ALJ failed to develop the record regarding his physical impairments and learning disabilities. He contends the ALJ erred by failing to include a learning disability among his severe impairments at step two of the decision-making process. He contends the ALJ erred at step 3 by failing to find that his combined impairments are medically equivalent to a presumptively disabling condition listed in the regulations. Alvarez challenges the accuracy of the ALJ's RFC assessment on the grounds that the ALJ improperly discounted Alvarez's subjective statements and the witness statements of his sister-in-law.

### II.  Development of the Record

Although the burden of establishing medically determinable impairments and showing disability is on the claimant, the ALJ has a duty to assist in the full and fair development of the record. *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 586, 589 (9th Cir. 1998). The duty to

develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F3d 453, 459-60 (9th Cir. 2001). Here, the record is inadequate to evaluate the functional limitations attributable to Alvarez's probable learning disabilities.

Alvarez alleged disability based in large part on learning disabilities. In October 2006, the state disability determination agency ordered an intellectual evaluation "to specifically examine issues of polysubstance abuse history, learning disability and posttraumatic stress disorder." (*Id.* at 381.) Ryan Scott, Ph.D., performed the evaluation, which included intelligence testing and resulted in a diagnosis of borderline intellectual functioning. (*Id.* at 386.) Remarkably, although evaluation of a possible learning disability was one of the specific purposes of the assessment, Dr. Scott indicated that "assessing for a learning disability is beyond the scope of this evaluation." (*Id.*) Dr. Scott noted that his findings showed Alvarez had low cognitive abilities with impaired working memory and processing speed consistent with learning disabilities. He opined that further testing for learning disorders was warranted and identified the appropriate test. (*Id.*)

At this juncture, it is unclear whether appropriate testing would identify additional functional limitations or would simply explain the underlying basis for the functional limitations already identified. The court does not have the expertise or authority to make independent medical findings of this nature. Accordingly, that determination must be made at the administrative level, and this case must be remanded for that purpose.

Alvarez also contends the ALJ failed to develop the record regarding his physical impediments to employment. He contends the record shows he has chronic pain and difficulty with lifting, squatting, bending, reaching, kneeling, and seeing. (*Id.* at 107.) This argument is rejected.

The ALJ considered all the evidence Alvarez presented of physical limitations. The ALJ found that the evidence showed no basis for exertional limitations, based on the findings of Martin Kehrli, M.D., and Neal Berner, M.D., and on the daily activities Alvarez reported. (Admin. R. 16.) Dr. Kehrli correctly observed that the medical records showed Alvarez had been treated for a series of acute conditions and injuries, but no chronic symptoms. (*Id.* at 390, 485.) Dr. Berner concurred that the evidence did not support severe physical impairments. (*Id.* at 535.) Alvarez has no diagnosis for any chronic physical condition, except hepatitis C which has been entirely unsymptomatic. (*Id.* at 390.) The record is not ambiguous or inadequate with regard to Alvarez's physical limitations. Accordingly, there is no error in the ALJ's development of the record regarding physical impairments.

### III. The Step Two Severity Requirement

Alvarez contends the ALJ erred at step two by failing to designate a learning disability among his "severe impairments," as that term is used in the regulations. At step two, a claimant must meet what is known as the severity requirement. The claimant must show that he has any combination of impairments which causes more than minimal limitation in his ability to do basic work activities. 20 C.F.R. § 416.920(c). If the claimant fails to make this *de minimis* showing, he is not disabled within the meaning of the Social Security Act and the disability determination process ends without further inquiry. 20 C.F.R. § 416.920(a)(4)(ii).

Here, the ALJ resolved step two in favor of Alvarez, finding his ability to perform basic work activities significantly affected by the combination of impairments described above, *viz.* hepatitis C, borderline intellectual functioning, depression, and a history of substance abuse. (Admin. R. 13.) The ALJ did not end the disability determination process at step two, he continued his inquiry until

5 - OPINION AND ORDER

reaching a determination at step five of the decision-making process. Any error in failing to designate a learning disability as a separate and distinct severe impairment did not prejudice Alvarez at step two. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(any error in omitting an impairment from the severe impairments identified at step two was harmless where step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(failure to list an impairment as severe at step two was harmless error where the ALJ considered the functional limitations posed by that impairment later in the decision).

After a claimant has surmounted the step two severity requirement, an ALJ must take into consideration in the remaining steps of the decision all evidence of functional limitations imposed by medically determinable impairments, including any that were not identified as severe at step two. 20 C.F.R. § 416.923; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *5. Accordingly, the ALJ was required to consider all evidence of functional limitations attributable to learning disabilities in the remaining steps of his decision. The ALJ considered all the evidence Alvarez presented of functional limitations from mental impairments, but that evidence did not include a complete evaluation of Alvarez's probable learning disability.

In summary, there was no harmful error at step two, because the ALJ resolved step two in favor of Alvarez. Nonetheless, the Commissioner was unable to evaluate the functional impact of Alvarez's learning disability in the remaining steps of his decision. The Commissioner must revisit the entire decision, including step two, in light of any functional limitations attributable to a learning disability which may be identified in the proceedings after remand.

IV. **Listing of Impairments**

The Commissioner acknowledges that certain conditions are so severe as to preclude substantial gainful activity. If the medical evidence establishes that a claimant suffers from such a condition, the claimant will be presumed to be disabled without further inquiry. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.924(d)(1). Each presumptively disabling condition is known as a listing, and the criteria for each listing are enumerated at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). Each listing for a mental impairment includes an introductory statement that describes the disorder followed by a set of medical findings in paragraph A and a set of impairment-related functional limitations in paragraph B. An individual meets the criteria of the listing when the criteria of both paragraphs A and B are satisfied. Listing of Impairments § 12.00(A).

If the criteria for a listing are not met, a claimant can show medical equivalence with the listing by establishing medical findings related to his impairment that are at least of equal medical significance to those of the listed impairment. 20 C.F.R. § 416.926(a). The determination of medical equivalence must be based on medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 514; 20 C.F.R. § 416.926(b). The ALJ must explain adequately his evaluation of the evidence and the combined effects of impairments. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

Alvarez concedes that his impairments do not meet the criteria for any listing, but argues that the combination of his borderline intellectual functioning, major depressive disorder, probable anxiety, and probable learning disability should have been found medically equivalent to a listing. He did not specify the particular listing with which he claims medical equivalence, but it is reasonable to conclude that his claim is premised on limitations in mental function.

The ALJ found that Alvarez could not satisfy any of the listings for mental impairments because he had not established the severity level required by the B criteria. (Admin. R. 13-14.) To satisfy paragraph B of the listings for mental impairments, a claimant must show marked impairment in two of following broad categories of function: marked restrictions in activities of daily living; marked difficulties maintaining social functioning; marked difficulties maintaining concentration, persistence, or pace; or repeated episodes of decompensation of extended duration. Listing of Impairments § 12.00.

The ALJ relied on the findings of reviewing psychologist Dorothy Anderson, Ph.D., who found the evidence showed mild restrictions in activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace and no episodes of decompensation of an extended duration. (Admin. R. 14, 477.) Another psychologist reviewed the entire record and reached the same conclusion. (*Id.* at 377.) Alvarez does not assert any evidence showing greater impairment in any of the four B criteria categories.

Accordingly, there is no error in the ALJ's evaluation of medical equivalence with the listings for mental impairments. Nevertheless, the Commissioner must revisit step three of his decision to take into account any additional functional limitations that may be identified during evaluation of Alvarez's learning disabilities in proceedings after remand.

## V.     Credibility Determination

Alvarez contends the ALJ improperly discounted his subjective statements and the statements of his sister in law. Alvarez submitted written statements in which he alleged chronic pain and difficulty with lifting, squatting, bending, reaching, kneeling, and seeing. (Admin. R. 107.) He concedes, however, that his primary barriers to employment arise from non-exertional mental

impairments. Pltfs.' Br. 6. Alvarez testified that he can read and write, but cannot spell. (*Id.* at 36.) He has poor memory for recent events. (*Id.* at 40.) He takes Seroquel for depression. He has had trouble getting along with authority figures in the past, but has never been fired from a job. (*Id.* at 48, 53-54.) For daily activities, Alvarez watches a lot of television, rides his bicycle, goes fishing, shops, cooks, attends group therapy and Sunday school and sees his counselor. (*Id.* at 50.) Alvarez said he has trouble being understood and misunderstands other people. (*Id.* at 53.)

The ALJ accepted Alvarez's allegations of mental impairments making it necessary for him to work primarily alone, not in proximity to coworkers or the public, not under close scrutiny by a supervisor, only with simple verbal instructions of no more than two steps, and only in a predictable, routine environment. (*Id.* at 15.) The ALJ discounted Alvarez's allegation that he cannot sustain work within these restrictions. He did not believe Alvarez to the extent his statements suggested limitations that would not be accommodated by his RFC assessment. (*Id.*)

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986); SSR 96-7p, 1996 WL 374186. Here, the ALJ found Alvarez had medically determinable impairments that could reasonably be expected to produce the symptoms he alleged. He was therefore required to assess Alvarez's credibility regarding the severity and limiting effects of his symptoms. *Smolen*, 80 F.3d at 1281-82.

An ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing specific reasons for the credibility finding, supported by evidence in the case record. SSR

96-7p, 1996 WL 374186, at *4. The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Tommasetti*, 533 F.3d at 1039. In addition, an ALJ's adverse credibility finding must be explained with clear and convincing reasons. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue,* 504 F. 3d 1028, 1036 (9th Cir. 2007).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. 20 C.F.R. § 416.929(c); *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's RFC assessment reasonably accounted for the specific symptoms and non-exertional limitations Alvarez claimed in his statements. Accordingly, the ALJ discounted only Alvarez's claims of physical limitations and the allegation that he is unable to sustain basic work of any kind.

The ALJ considered the proper factors. Treating providers did not identify additional functional limitations. Alvarez has a long history homelessness and alcohol and drug abuse. He testified that he had been clean and sober for over a year, and the ALJ credited that statement. (*Id.* at 16, 39-40.) Alvarez received medical care primarily from hospital emergency rooms. In March 2006, he was brought to the hospital by police after threatening to jump from a bridge. He was too intoxicated to interview. (*Id.* at 317-20.) In April 2006, he had a bicycle accident while intoxicated

10 - OPINION AND ORDER

and broke his clavicle. (*Id.* at 249-52.). In June 2006, he was seen again for acute alcohol intoxication. (*Id.* at 242-44.) Treating physicians noted that his main problem was homelessness and polysubstance abuse, with some indications of depression. (*Id.* at 300-01.) In October 2006, Alvarez underwent consultative evaluation by Dr. Scott, as described previously. Dr. Scott diagnosed major depression, alcohol dependence, amphetamine dependence in early remission, and borderline intellectual functioning; he also suggested that further testing for learning disabilities was warranted. (*Id.* at 386.) Bill Hennings, Ph. D., reviewed the entire record up to that point and prepared a mental residual functional capacity worksheet indicating limitations consistent with the RFC assessment reached later by the ALJ. (*Id.* at 391-93.) In February 2007, Alvarez was brought to the hospital by police after being assaulted. He was markedly intoxicated and admitted to drinking six-to-eight beers a day, as well as to recent methamphetamine abuse. (*Id.* at 417-18, 420-21.) In April 2007. Alvarez returned to the emergency room with anxiety and suicidal ideation. Gary Young, M.D., diagnosed substance abuse and personality disorder, and prescribed Seroquel for anxiety. Alvarez was evaluated by Pam Crawford, Psy.D., who agreed with Dr. Young's diagnosis and found Alvarez easily distractible and impulsive. (*Id.* at 400-01.) In June 2007, Dorothy Anderson, Ph.D., reviewed the entire record and prepared a mental RFC worksheet which the ALJ adopted. (*Id.* at 483.) Paul Rethinger, Ph.D., concurred in her findings. (*Id.* at 536.)

The ALJ considered all of the medical evidence and found no treating, examining, or reviewing source identified functional impairments in excess of those in his RFC assessment. In particular, no treating or examining source opined that Alvarez had impairments that would preclude basic work. The ALJ considered the relevant factors and reached conclusions that are supported by substantial evidence. Accordingly, there was no error in the ALJ's credibility determination.

Nevertheless, the Commissioner must revisit this question and reevaluate Alvarez's testimony in light of any evidence that may be produced in proceedings after remand.

## VI.     Lay Witness Statements

Alvarez contends the ALJ improperly discounted the witness statements of his sister-in-law, Kimberly Crossman. Crossman provided two written statements and testified at the administrative hearing. Crossman testified that Alvarez had always been different from his peers and was slow to catch on. He has difficulty staying focused and completing tasks. She said that Alvarez is better when he is clean and sober and compliant with his medication, but still does not focus as well as he should and has trouble comprehending instructions. (Admin. R. 59-61.) The ALJ found Crossman's testimony not credible. (*Id.* at 16.)

An ALJ must consider lay witness statements concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Lay statements as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the statements of a lay witness, he must give reasons that are germane to the witness. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

Here, the ALJ discounted Crossman's testimony because the limitations she described were not supported elsewhere in the record and because her demeanor suggested she was exaggerating the extent of Alvarez's disability. (*Id.* at 16.) The transcript of the hearing does not suggest Crossman exaggerated and does not provide any reasonably reviewable indication of her demeanor. In addition, proceedings after remand could produce evidence of functional limitations from a learning

disability to support Crossman's testimony. Accordingly, the question of Crossman's credibility should be revisited in light of evidence produced in the proceedings after remand.

\\\

## CONCLUSION

Based on the foregoing, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this opinion. The Commissioner must adduce additional evidence regarding Alvarez's alleged learning disabilities and reevaluate all aspects of his decision in light of that evidence.

The Clerk is directed to grant judgment for plaintiff pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 8th day of December, 2011.

/s/ John V. Acosta
John V. Acosta
United States Magistrate Judge